UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL RAY ARROYO, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 12-753S |
| | : | |
| COMMONWEALTH OF | : | |
| MASSACHUSETTS, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

On October 25, 2012, Plaintiff Michael Ray Arroyo ("Arroyo"), a resident of Franklin,

Massachusetts, filed a hand-written *pro se* Complaint, consisting of unintelligible paragraphs and

exhibits.  His simultaneously-filed motion for leave to proceed *in forma pauperis* was granted on

November 2, 2012.  Prior to purported service on the Defendant "Commonwealth of

Massachusetts, Deval Patrick"[1] ("Massachusetts"), he filed an Amended Complaint on February

11, 2013, also hand-written and unintelligible.  The summons was returned executed on April 9,

2013; Arroyo promptly filed his First Motion for Assessment of Damages, which has been

referred to me for determination pursuant to 28 U.S.C. § 636(b)(1)(A).  He has since filed a

motion for default judgment.

---

[1] Who or what is the defendant in this case is far from clear.  Plaintiff served a single summons purporting to serve a single defendant that he named as "Commonwealth of Massachusetts, Deval Patrick."  See Fed R. Civ. P. 4(b) (a separate summons, or a copy of a summons that is addressed to multiple defendants, must be issued for each defendant to be served).  Despite the reference to Deval Patrick, who presently is the Governor of Massachusetts, it would appear that the intended defendant is the Commonwealth of Massachusetts.  In any event, if the Office of the Governor is the defendant, this is still effectively a suit against the State.  Laubinger v. Dep't of Revenue, 672 N.E.2d 554, 557 (Mass. App. Ct. 1996).  If interpreted as a claim against Deval Patrick in his individual capacity, the Complaint is otherwise not viable for the reasons discussed in the text.  See Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009) (governmental official cannot be held liable unless he himself acted on account of a constitutionally-protected characteristic; when no factual allegation sufficient to plausibly suggest discriminatory state of mind, complaint dismissed); see Pieve-Marin v. Combas-Sancho, 967 F. Supp. 667, 669-70 (D.P.R. 1997) (complaint presenting a viable claim, but ambiguous about whether officials sued in individual or official capacity to be construed liberally).

Because Plaintiff is proceeding *in forma pauperis*, his Complaint and Amended Complaint[2] (collectively, "Complaint") are subject to preliminary screening under 28 U.S.C. § 1915(e)(2).  For the reasons set out below, I conclude that the referred Motion (ECF No. 10) should be DENIED and make a *sua sponte* recommendation that the Complaint should be DISMISSED.  20 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1).

## I.    The Claims

Plaintiff's claims seem to stem from alleged abuse by hospital staff and potential medical malpractice arising from events that occurred on December 19, 2007, and November 8 and 11, 2008, at the Milford Regional Medical Center ("MRMC") and the UMass Memorial Medical Center ("UMMC") in Worcester, Massachusetts.  His Civil Cover Sheet (ECF No. 1-3) names the Plaintiff as "Michael Ray Arroyo (God)," the nature of the suit as "Other Civil Rights" and describes his cause of action as "Michael Ray Arroyo put through a tremendous amount of ABUSE in the State of Massachusetts."[3]  His Complaint refers to "unknown parties" who "have collected different amounts of money from different courthouses" without notifying him and "rewarding" him his fair share of a settlement.[4]  Based solely on the factual allegations surrounding the alleged medical malpractice and abuse based on the incidents at MRMC and UMMC and the passing reference to the settlement, the Complaint recites that it arises under "the Civil Rights Act of 1871, 42 U.S.C. sections 1983 and 1988," and alleges excessive force and

---

[2] The Complaint contains much that is not repeated in the Amended Complaint.  Because Plaintiff is *pro se*, and entitled to a liberal construction of the relevant pleading, both the original Complaint and the amended version were reviewed pursuant to § 1915(e)(2).  See Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ., 209 F.3d 18, 23 (1st Cir. 2000).

[3] The Court has corrected obvious spelling and grammatical errors in Plaintiff's filings.

[4] In 2008, Plaintiff filed, through counsel, a suit against the Commissioner of the Social Security Administration seeking judicial review of the denial of disability benefits.  A settlement agreement was reached.  See Arroyo v. Astrue, No. 08-10301-NMG (D. Mass.).  It appears that this reference in the Complaint relates in some way to that settlement agreement dated February 19, 2009.

deprivation of liberty by the "Defendants" (unnamed) in violation of the Fourth and Fourteenth

Amendments of the Constitution.  It seeks monetary damages of $300 trillion from

Massachusetts and Rhode Island.

The Amended Complaint adds references to "thousands of citizens in the Commonwealth

of Massachusetts illegally entrapping me and severely abusing me" and allowing "over 1000

citizens to rape one man's body."  It seeks the following remedy:

> To: Governor Deval Patrick you need to immediately call God's cell phone and
> save my life from abusive gravity and entrapment in the Commonwealth of
> Massachusetts.

Arroyo purported to serve Massachusetts by delivery of the Summons and Complaint to

an administrative assistant in the Western Massachusetts Office of the Governor, with the return

of service filed on April 9, 2013.  Meanwhile, on April 1, 2013, he filed his "Motion for

Assessment of Damages."  ECF No. 10.  It asserts that he is missing a "portion of bone" in his

left arm, which was amputated by a physician at UMMC to "allow over 100 thousand abusive

citizens" to "torture and rape [his] brain."  It concludes that, "[a]s a supernatural God," the

United States should "reward [him] $100,000,000,000.00 for a healthy recovery from the severe

abuse."

## II.     History of Prior Litigation

This is not the first time Plaintiff has attempted to assert claims based on the events that

occurred at UMMC and MRMC.  Indeed, as far as this Court has been able to discover, he has a

significant history as a litigant in the United States District Court in Massachusetts with respect

to the same events.

On August 31, 2012, Plaintiff filed the first civil complaint located in the District of

Massachusetts against Massachusetts.  He alleged physical abuse (e.g., his "bone was raped") by

hospital staff and medical malpractice during a surgical operation.  See Arroyo v. State of
Massachusetts, No. 12-11695-WGY (D. Mass.).  His claims related to both UMMC and the
MRMC.  He also claimed the Board of Health in Worcester, Massachusetts, failed to inspect
UMMC and that Massachusetts was pressuring him to pay taxes notwithstanding the abuse he
suffered.

On September 14, 2012, Judge William G. Young dismissed the action *sua sponte,* see
Memorandum and Order (ECF No. 6), noting the pleading deficiencies under Rule 8 of the
Federal Rules of Civil Procedure and holding that Eleventh Amendment sovereign immunity
barred the claims.[5]  Plaintiff appealed to the First Circuit, which summarily affirmed the
dismissal by the District Court.  See Arroyo v. Massachusetts, No. 12-2302 (1st Cir. Nov. 30,
2012) (mandate).

Undeterred by Judge Young's dismissal, on September 28, 2012, Plaintiff filed two more
lawsuits stemming from the same alleged medical abuse.

In the first of the two actions, Arroyo v. State of Massachusetts, et al., No. 12-11845-
WGY, he sued Massachusetts again alleging he was abused when a UMMC doctor performed
surgery on his arm (on December 19, 2007), and again on November 8, 2008, and November 20,
2008, when he was abused by staff at UMMC who injected him with needles without his
consent.  In addition to the medical care claims, Plaintiff also alleged that the Town of
Framingham was liable for pressuring him to pay taxes (i.e., excise tax of $82.05 on his 1986
Ford) while he was abused.  He named James P. Dacey, the Tax Collector and Town Treasurer,
as a defendant.  In the second contemporaneously-filed suit, Arroyo reiterated the same claims of

---

[5] Prior to the dismissal of that action, on September 11, 2012, Plaintiff filed a second lawsuit against Massachusetts
in the District of Massachusetts.  See Arroyo v. State of Massachusetts, No. 12-11746-GAO.  That lawsuit alleged
that he was the victim of identity theft, and complained that the Social Security Administration would not issue him
a new social security number.  On October 10, 2012, Judge George A. O'Toole, Jr., dismissed the action *sua sponte*.
See Memorandum and Order (ECF No. 6).

abuse and medical malpractice.  Arroyo v. State of Massachusetts, et al., No. 12-11846-WGY.

In addition to naming Massachusetts, he named as a defendant Michael P. Hirsh, the Acting

Commissioner of the Board of Health in Worcester, Massachusetts, for failing to inspect

UMMC.  He also claimed the defendant failed to notify UMMC workers that honesty needed to

be demonstrated and that abuse was not acceptable.

On October 10, 2012, Judge Young issued a consolidated Memorandum and Order (ECF

No. 6 in both cases) dismissing *sua sponte* the claims against the Commonwealth and the

defendants in their official capacities, and directing Plaintiff to demonstrate good cause why both

actions should not be dismissed.  The Memorandum and Order addressed the various legal

impediments to Plaintiff's claims, including, *inter alia*, the statute of limitations (noting that the

alleged violations by medical staff occurred in 2007 and 2008), the lack of *respondeat superior*

liability, and the failure to state a cognizable negligence claim under the Massachusetts Tort

Claims Act.  On November 27, 2012, Judge Young dismissed both cases after finding that

Plaintiff's amended complaints and show cause responses did not demonstrate good cause not to

dismiss those actions.

Plaintiff tried again on February 1, 2013, when he filed a "stream-of-consciousness"

action against Lisa Bocelli, an employee of UMMC, claiming physical abuse by hospital staff

and that the defendant was negligent in admitting him as a patient based on the same incidents.

Arroyo v. Bocelli, No. 13-10204-PBS (D. Mass.).  Judge Patti B. Saris promptly screened the

complaint and dismissed it on February 8, 2013, for lack of federal subject matter jurisdiction

and failure to plead claims pursuant to Fed. R. Civ. P. 8.  Significantly to this Rhode Island case,

the Court ordered Plaintiff to demonstrate, at the time of filing a new suit based on the 2007-

2008 events at UMMC, that his claims are not barred by the applicable statute of limitations. ECF No. 8, at 16.

**III.   Discussion**

A.   Screening of the Complaint

Because Arroyo is proceeding *in forma pauperis*, his Complaint is subject to preliminary screening under 28 U.S.C. § 1915(e)(2).  This statute authorizes federal courts, at any time, to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  See id.; Denton v. Hernandez, 504 U.S. 25, 32-33 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989).

In addition to the statutory screening provisions, this Court has an independent obligation to inquire, *sua sponte*, into its subject matter jurisdiction.  See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004); see also In re Recticel Foam Corp., 859 F.2d 1000, 1002 (1st Cir. 1988) ("It is too elementary to warrant citation of authority that a court has an obligation to inquire sua sponte into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting.").  For purposes of preliminary screening, the Court liberally construes Plaintiff's Complaint because he is proceeding *pro se.*  See note 2, supra. Nevertheless, even under a liberal construction, I recommend that the case should be dismissed for the reasons discussed below.

B.   Failure to Plead Claims Pursuant to Fed. R. Civ. P. 8

Rule 8(a) requires a plaintiff to include in a complaint, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. Civ. P.

8(a)(2).  This statement must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005); Phelps v. Local 0222, No. 09-11218, 2010 WL 3342031, at *5 (D. Mass. Aug. 20, 2010).  The complaint must afford the defendant(s) a "['] meaningful opportunity to mount a defense.'"  Diaz–Rivera v. Rivera–Rodriguez, 377 F.3d 119, 123 (1st Cir. 2004) (quoting Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)); see Redondo– Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005); Benyamin v. Commonwealth Med. UMass Med. Ctr., Inc., No. 11-40126, 2011 WL 2681195, at *2, (D. Mass. July 6, 2011).  "[I]n a civil rights action as in any other action . . ., the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why."  Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004).  Although "the requirements of Rule 8(a)(2) are minimal . . .[,] 'minimal requirements are not tantamount to nonexistent requirements.'"  Id. (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)).

Here, as noted above, Plaintiff's Complaint is not coherent.  Moreover, it fails to include a short and plain statement of his cause(s) of action.  Without belaboring the matter, he fails to set forth the "who, what, when, where and why" information necessary to state a plausible claim upon which relief may be granted.  Indeed, much of the Complaint is "sufficiently fantastic to defy reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel;" for that reason alone it is subject to dismissal.  Iqbal, 556 U.S. at 696 (Souter, J, dissenting).

Moving to Plaintiff's specific cause of action, Plaintiff purports to invoke this Court's subject matter jurisdiction by referring to 42 U.S.C. § 1983.  However, he fails to set forth the basis of any claim against the named Defendant, the Commonwealth of Massachusetts, and therefore fails to set forth plausible civil rights claims under Rule 8(a) of the Federal Rules of Civil Procedure.  In addition, Plaintiff's claims against Massachusetts may not be maintained because the Commonwealth is not a "person" subject to suit for monetary damages under Section 1983.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989); Johnson v. Rodriguez, 943 F.2d 104, 108-109 (1st Cir. 1991) (state agency cannot be sued for damages in a § 1983 claim).  Similarly, if interpreted as asserting a claim against the Governor, Plaintiff's claim for damages against the Governor in his official capacity must be dismissed, as "State officials sued for damages in their official capacity are not 'persons' under § 1983 because the law treats the action as [one] against the official's office and hence against the State."  Laubinger, 672 N.E.2d at 557 (quoting O'Malley v. Sheriff of Worcester Cnty., 612 N.E.2d 641, 648 n.13 (Mass. 1993)).  "[T]o avoid a State's sovereign immunity to a damages suit, a plaintiff must sue the State official in his individual and not his official capacity."  Id.  If the Complaint were to be interpreted as a claim for damages against the Governor in his individual capacity, it fails because it totally lacks plausible allegations linking the Governor to conduct potentially actionable under Section 1983; the only factual allegation pertaining to the Governor is that he "failed to patrol the State of Massachusetts and make appropriate actions – Arrests in Court as needed to keep the State of Massachusetts violence free."  Who should have been arrested is not disclosed nor is there any allegation of linkage between the Governor and the events at UMMC and MRMC.  Iqbal, 556 U.S. at 683 (governmental official cannot be held liable unless he

himself acted on account of a constitutionally protected characteristic; when no factual allegation sufficient to plausibly suggest discriminatory state of mind, complaint should be dismissed).

Plaintiff was previously advised by the court in the District of Massachusetts about the Rule 8 pleading requirements.  It does not appear that he attempted remotely to comply with these requirements when filing this action.  Accordingly, Plaintiff's claims under 42 U.S.C. § 1983 should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) (failure to state a claim upon which relief may be granted).

    C.    <u>Plaintiff's Claims Are Barred By Eleventh Amendment Immunity</u>

Massachusetts is entitled to sovereign immunity from this monetary damages suit.  "The Eleventh Amendment bars actions in federal courts claiming damages against a state and its agencies unless the state has consented to be sued in federal court."  <u>Boulais v. Massachusetts</u>, No. 00-12086, 2002 WL 225936, at *1 (D. Mass. Jan. 30, 2002) (citations omitted); <u>see</u> <u>Seminole Tribe of Fla. v. Florida</u>, 517 U.S. 44, 54 (1996); <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.14 (1985) (unless a State has "waived its Eleventh Amendment immunity or Congress has overridden it, . . . a State cannot be sued directly in its own name regardless of the relief sought"); <u>Alabama v. Pugh</u>, 438 U.S. 781, 781 (1978) (per curiam) (Eleventh Amendment generally is recognized as a bar to suits against a State, its departments and agencies unless the State has consented to suit); <u>see also</u> <u>Brown v. Newberger</u>, 291 F.3d 89, 92 (1st Cir. 2002) ("[T]here has been no unequivocal abrogation of the Commonwealth's Eleventh Amendment immunity").  Even construing Plaintiff's Complaint broadly, there is nothing in his allegations that reasonably could be construed as presenting claims as to which Massachusetts has waived its sovereign immunity to suit in federal court.[6]

---

[6] Similarly, state employees sued for monetary damages for actions taken in their "official capacity" are also immune from suit for monetary damages.  The Eleventh Amendment extends to confer immunity from suit upon

To the extent that the Massachusetts Tort Claims Act ("MTCA") provides for a limited waiver of sovereign immunity by Massachusetts, any MTCA claims by Plaintiff (which are not in the Complaint) against Massachusetts, based on the alleged negligence of any physician at UMMC or abuse by other hospital staff, would not be cognizable in this Court, because it does not appear that he has satisfied the administrative presentment requirements of Mass. Gen. Laws ch. 258, § 4 ("A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose.").[7]  In any event, standing independently, MTCA claims cannot be heard in federal court.  See Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003) ("By enacting the [MTCA], the Commonwealth has not waived its Eleventh Amendment immunity to suit in federal court."); see also Rivera v. Massachusetts, 16 F. Supp. 2d 84, 87-88 (D. Mass. 1998) (citing Irwin v. Comm'r of Dep't of Youth Servs., 448 N.E.2d 721, 727 (Mass. 1983) (answering question certified by the United States District Court for the District of Massachusetts, to the effect that jurisdiction conferred on the superior court under the MTCA, Mass. Gen. Laws ch. 258, § 3, is exclusive)).

---

state officials when "the state is the real, substantial party in interest," that is, when "the judgment sought would expend itself on the public treasury . . ., or interfere with the public administration . . . ." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02 n.11 (1984); accord Hafer v. Melo, 502 U.S. 21, 25 (1991) (same). Therefore, to the extent that Plaintiff seeks monetary relief from the Governor for actions taken in an official capacity, the Eleventh Amendment bars such relief.  See Will, 491 U.S. at 71 (although state officials are literally persons, a suit against a state official in his official capacity is not a suit against the official but rather is a suit against the official's office).

[7] It is further noted that Plaintiff has not named individual hospital employees as parties to this action.  To the extent that he is deemed to assert claims of negligence and physical abuse, solely based on state law, and presuming the individuals who allegedly acted wrongfully are Massachusetts citizens, this Court would lack subject matter jurisdiction over any tort suit against them, under 28 U.S.C. § 1332 (diversity of citizenship), because there would not be complete diversity between the parties.

D.    The Claims are Barred by the Applicable Statute of Limitations

As both Judge Young and Judge Saris have noted, Arroyo's claims stemming from his

alleged medical abuse at UMMC and Milford Medical Center occurred in 2007-2008.  The most

recent event that conceivably appears in the Complaint is the settlement, which the Complaint

mentions only in passing; its date can be derived from the entry on the court's docket of

February 19, 2009.  Accordingly, all of Plaintiff's claims appear to be barred by the statute of

limitations for civil rights claims under 42 U.S.C. § 1983, which, as Judge Young noted, is three

years.  Nieves v. McSweeney, 241 F.3d 46, 52-53 (1st Cir. 2001); see also Owens v. Okure, 488

U.S. 235, 249-50 (1989); Rodriguez-Garcia v. Municipality of Caguas, 354 F.3d 91, 96 (1st Cir.

2004) (§§ 1981, 1983 and 1985 borrow forum state's statute of limitations for personal injury

claims); Mass. Gen. Laws ch. 260, § 2A (three-year statute of limitations for personal injury

claims).[8]

This Court recognizes that a complaint may be dismissed on statute of limitations

grounds "only if 'the pleader's allegations leave no doubt that an asserted claim is time-barred.'"

Young v. Lepone, 305 F.3d 1, 8 (1st Cir. 2002) (quoting LaChapelle v. Berkshire Life Ins. Co.,

142 F.3d 507, 509 (1st Cir. 1998)).  Further, "a complaint which states a claim that appears to

have expired under the applicable statute of limitations may be dismissed as frivolous" under the

---

[8] "[T]he primary purpose of a statute of limitations is to prevent plaintiffs from sleeping on their rights and to prohibit the prosecution of stale claims."  Barrett ex rel. Estate of Barrett v. United States., 462 F.3d 28, 41 n.11 (1st Cir. 2006) (quoting Edes v. Verizon Commc'n, Inc., 417 F.3d 133, 142 (1st Cir. 2005)).  Under Massachusetts law, a statute of limitations period "begins to run 'when a plaintiff discovers, or any earlier date when she should reasonably have discovered, that she has been harmed or may have been harmed by the defendant's conduct.'" Epstein v. C.R. Bard, Inc., 460 F.3d 183, 187 (1st Cir. 2006) (quoting Bowen v. Eli Lilly & Co., 557 N.E.2d 739, 741 (Mass. 1990)).  "A plaintiff is considered to be on 'inquiry notice' when the first event occurs that would prompt a reasonable person to inquire into a possible injury at the hands of the defendant."  Id. (citing Szymanski v. Bos. Mut. Life Ins. Co., 778 N.E.2d 16, 20-21 (Mass. App. Ct. 2002)); see Marino v. Gammel, 191 F. Supp. 2d 243, 253 (D. Mass. 2002) ("In this circuit, Bivens and Section 1983 claims accrue at the moment the plaintiff knows, or has reason to know, of the injury that is the basis for the claims.").

*in forma pauperis* statute.  <u>Johnson</u>, 943 F.2d at 107 (quoting <u>Street v. Vose</u>, 936 F.2d 38, 39 (1st Cir. 1991) (per curiam)).  That appears to be the case here.

A final observation on the statute of limitations: Judge Saris ordered that, should Arroyo seek to assert any claims in the future that stem from his alleged physical abuse at UMMC in 2007-2008, he must demonstrate, at the time of filing any new complaint, that his claims are not time-barred by the statute of limitations as discussed above.  He has failed to comply with that Order.  With the underlying claims even more remote in time, this Court presumes that they are time-barred due to Plaintiff's failure to comply with that Order.  Accordingly, the case should be dismissed.

E.        <u>The Claims are Barred by the Doctrine of Res Judicata</u>

Under the doctrine of res judicata, a final judgment on the merits of an action precludes the parties from re-litigating claims that were or could have been raised in the prior action.  <u>Haag v. United States</u>, 589 F.3d 43, 45 (1st Cir. 2009); <u>Gonzalez v. Banco Cent. Corp.</u>, 27 F.3d 751, 755 (1st Cir. 1994).  "[T]the elements of res judicata are (1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits."  <u>Haag</u>, 589 F.3d at 45 (quoting <u>Gonzalez</u>, 27 F.3d at 755).  Res judicata promotes judicial efficiency and prevents claim-splitting by requiring litigants to assert all of their factual allegations and legal theories arising out of the claim the first time they come to court.  <u>Maher v. GSI Lumonics, Inc.</u>, 433 F.3d 123, 126 (1st Cir. 2005); <u>see also</u> <u>Gonzalez</u>, 27 F.3d at 757 ("The doctrine of res judicata serves many desirable ends, among them finality and efficiency.").

The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, collectively "res judicata."  Under the doctrine of claim preclusion, a final judgment forecloses

"successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (quoting New Hampshire v. Maine, 532 U.S. 742, 748 (2001)).  Issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim. Id.  By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," these two doctrines protect against "the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." Montana v. United States, 440 U.S. 147, 153-54 (1979). With respect to identicality of causes of action, the First Circuit employs a transactional analysis whereby identity exists "if both sets of claims – those asserted in the earlier action and those asserted in the subsequent action – derive from a common nucleus of operative facts." Haag, 589 F.3d at 46.  "Put another way, 'as long as the new complaint grows out of the same transaction or series of connected transactions as the old complaint, the causes of action are considered to be identical.'" Id. (quoting Kale v. Combined Ins. Co., 924 F.2d 1161, 1166 (1st Cir. 1991)).

Here, Plaintiff has brought at least two prior claims that name Massachusetts as a defendant and that arise from a common nucleus of facts (the alleged abuse and medical malpractice at UMMC and MRMC) that are essentially identical to those asserted here. Particularly where this case is yet another iteration of the same claim against the same defendant by a litigant proceeding *in forma pauperis*, the doctrine of res judicata applies and the complaint must be dismissed.  See Waller v. Groose, 38 F.3d 1007, 1008 (8th Cir. 1994) (per curiam) (28 U.S.C. § 1915 dismissal bars subsequent *in forma pauperis* complaint making the same

allegations as the dismissed complaint under doctrine of res judicata); Skinner v. Chapman, 489 F. Supp. 2d 298, 301-03 (W.D.N.Y. 2007) (second federal court action against same defendants for same incident dismissed based on res judicata as to both claims dismissed under § 1915 and claims dismissed at summary judgment).

      F.      Failure to Serve Defendant

Plaintiff purported to serve Massachusetts by delivery of the Summons and Complaint to an administrative assistant in the Western Massachusetts Office of the Governor, with the return of service filed on April 9, 2013.  Pursuant to Rule 4, service on a state or other state-created governmental organization is accomplished either by delivering a copy of the summons and complaint directly to its chief executive officer or by serving a copy in the manner prescribed by state law.  Fed. R. Civ. P. 4(j)(2).  Under the law of Massachusetts, the Commonwealth and its agencies (including the office of the Governor) can be served only by delivering a copy of the summons and complaint to the Boston office of the Attorney General of the Commonwealth and, in the case of any agency, to its office or to its chairman or one of its members or its secretary or clerk.  Mass. R. Civ. P. 4(d)(3).  Plaintiff has failed to serve the office of the Attorney General.  Accordingly, service either on Massachusetts or on the office of the Governor is deficient and no defendant has been joined in this matter.  See Aly v. Mohegan Council-Boy Scouts of Am., No. 08-40099, 2009 WL 3299951, at *1 (D. Mass. Apr. 20, 2009).

      G.      Improper Venue

Plaintiff's Complaint recites that "[v]enue is proper under 28 U.S.C. section 1391 in that the Defendants and Plaintiffs reside and the cause of action arises in the District of MASSACHUSETTS."  Aside from the fact that this Complaint is actually brought by a single plaintiff against a single defendant, on the face of this averment, venue in the District of Rhode

Island is completely improper pursuant to 28 U.S.C. § 1391(b), in that no party is a resident of

Rhode Island and none of the events or omissions that appear to give rise to the claim occurred in

Rhode Island.  This case has nothing to do with Rhode Island.  For this reason alone, this case is

subject to dismissal and may be characterized as frivolous pursuant to 28 U.S.C. §

1915(e)(2)(B)(i).

     H.     <u>Motion for Assessment of Damages</u>

Arroyo's Motion for Assessment of Damages (ECF No. 10) should be DENIED for all of

the reasons set forth above, including that Massachusetts has not been effectively served and

joined in this matter.  The Motion should also be denied because it purports to seek a monetary

remedy from the United States, not from Massachusetts; the United States is not a party to this

suit.

**IV.**     <u>**CONCLUSION**</u>

In light of the foregoing, the Court recommends that the action be DISMISSED *sua*

*sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(i-iii) (suit that is frivolous or malicious; fails to

state a claim on which relief may be granted; and seeks monetary relief from a defendant who is

immune from such relief).  Additionally, Plaintiff's Motion for Assessment of Damages (ECF

No. 10) should be DENIED.

Any objections to this Report and Recommendation must be specific and must be filed

with the Clerk of Court within fourteen (14) days after the date of service.  <u>See</u> Fed. R. Civ. P.

72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver

of the right to review by the district court and of the right to appeal the district court's decision.

<u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v.

Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
May 6, 2013